UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

WILLIAM MCGRANE and
MCGRANE LLP,

   Appellants,

  v.

HOWREY, LLP and
THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF HOWREY,
LLP,

   Appellees.

Case No. 14-cv-05111-JD

**ORDER ON APPEAL**

McGrane LLP ("MLLP") and its principal, William McGrane ("McGrane"), appeal the bankruptcy court's order finding violations of ethical duties under California law and partially denying them attorneys' fees and costs. McGrane and MLLP served as co-counsel for the Official Committee of Unsecured Creditors of Howrey, LLP, from December 2011 to September 2012. After withdrawing as counsel for the Committee, McGrane and MLLP represented individual creditors who appeared in the case and related matters. In response to a contested attorney's fees petition, the bankruptcy court found that McGrane and MLLP had acted adversely to the Committee on several occasions in violation of professional ethics, including California Rules of Professional Conduct 3-310(E).[1] It reduced MLLP's fee allowance and ordered partial disgorgement of fees previously paid on an interim basis for services provided before the ethical lapses.

---

[1] Dkt. No. 12-13 at AA1493-AA1515 (Memorandum Decision regarding (1) Final Fee Application of McGrane LLP and (2) Motion to Disqualify McGrane LLP and William McGrane, *In re Howrey LLP*, No. BR 11-31376DM, 2014 WL 5311258 (Bankr. N.D. Cal. Oct. 17, 2014)) (the "Fee Order").

The Court finds no error in the bankruptcy court's professional conduct determinations. The Court also finds that the bankruptcy court did not abuse its discretion in reducing McGrane and MLLP's fee award on that basis. Consequently, the Fee Order is affirmed.[2]

**BACKGROUND**

The parties do not meaningfully dispute the key facts detailed in the Fee Order. As the bankruptcy court stated, McGrane and his prior firm were attorneys of record for creditors who filed a chapter 7 involuntary case against Howrey LLP ("Howrey") in the bankruptcy court on April 11, 2011. Fee Order at 4. After the case converted to a chapter 11 proceeding, the Official Committee of Unsecured Creditors (the "Committee") was formed and its counsel petitioned the bankruptcy court for permission to retain McGrane and his firm MLLP as co-counsel. *Id*. at 4-5. In support of the application, McGrane expressly declared that he would "'represent only the Committee, and not any of its respective individual members, in connection with the case.'" *Id*. at 5. Although the trustee for the Howrey estate (the "Trustee") initially opposed the application, he withdrew the objections after the Committee's counsel pledged that McGrane and MLLP would not duplicate efforts and would only perform work that was either pre-approved or involved matters in which the Committee's counsel had potential conflicts. *Id*. at 5-7. The bankruptcy court authorized the employment on January 6, 2012, retroactive to December 2011. *Id*. at 7; *see id.* at 6 n.5. Less than ten months later, on September 26, 2012, McGrane and MLLP withdrew as counsel for the Committee with the Committee's consent and the Court's permission. *Id*. at 8; Dkt. No. 12-3 at 4.

The conduct leading to the ethical breaches began shortly after the withdrawal. In November 2012, MLLP filed a new complaint in the bankruptcy court on behalf of creditor Howrey Claims LLC ("Howrey Claims"), which had been formed on October 30, 2012, asserting class action alter ego claims against former Howrey partners. Fee Order at 8-9; Dkt. No. 12-3 at 4. The Trustee promptly moved to stop the case for violating the automatic stay. Fee Order at 9. The bankruptcy court granted the motion and dismissed the alter ego lawsuit with prejudice. *Id*. at

---

[2] Pursuant to Bankruptcy Local Rule 8012-1, the Court found this matter suitable for decision without oral argument and took it under submission on completion of the briefing.

2

10; *see also* Dkt. No. 12-7 at AA314-AA317 (January 18, 2013 Order Granting Trustee's Motion to Enforce Automatic Stay). In a subsequent appeal of that order and other alter ego-related orders that are not relevant here, the District Court affirmed the bankruptcy court across the board. Fee Order at 10-11.

In December 2012, the Committee moved to disqualify McGrane and MLLP from the case and from bringing an alter ego lawsuit. *Id*. at 9. In response, McGrane filed a declaration that publicly disclosed confidential information about the Committee's deliberations and strategy, including a memorandum and term sheet about a proposed chapter 11 plan. *Id.*; *see also* Dkt. No. 12-6 at AA276-AA305. The bankruptcy court placed the motion under seal and it was eventually terminated without decision in light of the orders dismissing the alter ego cases. Fee Order at 9-10; Dkt. No. 12-7 at AA314-AA317 (January 18, 2013 Order). The January 18, 2013 Order stated that the disqualification motion was "withdrawn without prejudice to the Committee seeking disqualification at any time (including without limitation any prejudice as may be asserted based on laches or similar principles)" except that the Committee agreed not to seek disqualification "based solely on Mr. McGrane's prosecution of appeals of this order or of the Dismissal Order" on the alter ego suit. Dkt. No. 12-7 at AA316. The order also stated that "Howrey Claims and its counsel will be held in contempt of court should they further pursue" the claims at issue "except as specifically allowed" by the order. *Id*.

In May 2014, the Trustee and the Committee negotiated a resolution of claims with 61 former Howrey partners and filed a joint motion for settlement approval. Fee Order at 11. McGrane and MLLP opposed the settlement on behalf of entities called the "Advanced Creditors," apparently out of a desire to keep alive alter ego theories the court had dismissed. *Id*. Because McGrane and MLLP had previously represented the Committee in directly related proceedings, the Committee strongly objected to the settlement opposition as improper. *Id*. at 11-12. Specifically, the Committee objected to McGrane and MLLP's "'interference in the administration of the Howrey estate,'" their attempts to "'supplant the business judgment of the Trustee and the Committee'" on the relative strength of various claims "'with their own,'" and their resultant objection to a settlement the Committee determined to be "'in the best interests of the unsecured

3

1    creditors.'" *Id*. at 12 (emphasis removed).  The Committee renewed its motion to disqualify

2    McGrane and MLLP.  *See* Dkt. No. 12-7 at AA629-AA630 (June 27, 2014 Notice of Hearing on

3    Renewed Motion to Disqualify); Dkt. No. 16-3 at Exh. A (May 20-21, 2014 emails re renewed

4    motion to disqualify).  After extensive briefing and hearings, the bankruptcy court overruled

5    McGrane's opposition and generally approved the settlement.  Fee Order at 12.

6         In addition to these key events, McGrane and MLLP made or joined several other

7    unsuccessful motions to the bankruptcy court.  These included a motion to modify the automatic

8    stay to permit an alter ego action, *id*. at 10, a motion to disqualify the Trustee, and a motion for a

9    stay of the settlement pending appeal, all of which the bankruptcy court denied.  *Id*. at 12-13.  A

10   number of appeals were also pursued, unsuccessfully.  *Id*. at 13-14.

11        McGrane and MLLP submitted several requests for attorney's fees and costs for work done

12   while representing the Committee.  They filed fee applications on April 17, 2012 and July 31,

13   2012 that were granted on an interim basis without significant challenge.  *See id*. at 1 n. 1, 7-8.

14   They filed a third interim fee application on October 19, 2012, after withdrawing as counsel for

15   the Committee.  *Id*. at 2, 8-9.  And they filed a fourth and final application for fees on May 30,

16   2014.  *Id*. at 2.

17        This appeal arises out of the bankruptcy court's disposition of the final fee petition.  The

18   Committee opposed the award of fees and costs to McGrane and MLLP because of the ethical

19   breaches, among other grounds.  *Id*.  After full briefing and oral argument, the bankruptcy court

20   issued a detailed decision denying fees and finding that McGrane and MLLP had violated the rules

21   of professional ethics and were required to disgorge approximately $30,000 in prior payments

22   back to the Trustee.  *Id*. at 21.  Specifically, the bankruptcy court found that they had violated their

23   obligations under Rule 3-310(E) of the California Rules of Professional Conduct, which applies to

24   attorneys practicing in the bankruptcy court through Bankruptcy Local Rule 1001-2(a) and our

25   Civil Local Rule 11-4(a)(1).  *Id*. at 14.  Rule 3-310(E) states that an attorney "shall not," without

26   the "informed written consent" of the former client, accept employment adverse to a former client

27   where through the prior engagement the attorney has obtained confidential information material to

28   the employment.  Cal. R. Prof. Conduct 3-310(E).  The bankruptcy court found that McGrane and

MLLP breached Rule 3-310(E) by among other conduct: (1) vigorously opposing the settlement reached and supported by the Committee; (2) pursuing suits that could have depleted assets and usurped claims that belonged to the estate; and (3) publicly disclosing the Committee's confidential information, all without client waivers. Fee Order at 17-20. Based on these ethical breaches, the bankruptcy court disallowed $46,325 of the $78,680 in fees sought by McGrane and MLLP in their final fee petition, and ordered disgorgement of $30,693.59 to the Trustee for fees already paid. *Id*. at 1-3. McGrane and MLLP appeal these holdings. Dkt. No. 12-3.

## DISCUSSION

### I. VIOLATION OF ETHICAL DUTIES

#### A. Standards

The Court reviews the bankruptcy court's findings of fact for clear error, and its legal conclusions de novo. *In re Strand*, 375 F.3d 854, 857 (9th Cir. 2004). The Court will not disturb the bankruptcy court's decision on attorneys' fees unless the bankruptcy court abused its discretion or erroneously applied the law. *Id*. The bankruptcy court's "orders on employment, disqualification, and compensation of professionals" are all reviewed under this deferential standard. *In re Song*, No. CC-07-1137-DMoPa, 2008 WL 6058782, at *7 (B.A.P. 9th Cir. Feb. 12, 2008), *aff'd sub nom. In re Won Ho Song*, 359 F. App'x 817 (9th Cir. 2009). Under abuse of discretion review, this Court "must affirm" the bankruptcy court unless it "applied the wrong legal standard or its findings of fact were illogical, implausible, or without support in the record." *Rodriguez v. Disner*, 688 F.3d 645, 653 (9th Cir. 2012) (citing *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).

Attorneys that appear before the Bankruptcy Court of the Northern District of California are subject to Bankruptcy Local Rule 1001-2(a), which incorporates Civil Local Rule 11-4(a). This rule requires attorneys to "comply with the standards of professional conduct required of members of the State Bar of California," among other obligations. Civ. L.R. 11-4(a). Rule 3-310(E) of the California Rules of Professional Conduct states that:

> A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment.

In addition, the "ethical rules recognize that the interest of the former client is to ensure 'permanent confidentiality of matters disclosed to the attorney in the course of the prior representation.'" *Farris v. Fireman's Fund Ins. Co.*, 119 Cal. App. 4th 671, 682 (2004) (quoting *Flatt v. Superior Court*, 9 Cal. 4th 275, 283 (1994)).

Under California law, "'an attorney is forbidden to do either of two things after severing [the] relationship with a former client. [The attorney] may not do anything which will injuriously affect [the] former client in any matter in which [the attorney] formerly represented [the client] nor may [the attorney] at any time use against [the] former client knowledge or information acquired by virtue of the previous relationship.'" *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011) (quoting *Wutchumna Water Co. v. Bailey*, 216 Cal. 564, 573–574 (1932)); *see also In re McIntosh*, No. 13–11774 AJ, 2015 WL 241130 at *5 (Bankr. N.D. Cal. Jan. 16, 2015) (same). Specifically, counsel may not undertake a concurrent or successive representation that has a "substantial relationship" with the prior representation and is adverse to the former client. *See In re Muscle Improvement, Inc.*, 437 B.R. 389, 394-95 (Bankr. C.D. Cal. 2010) (citing Rule 3-310(E) and California cases, including *Flatt*, 9 Cal. 4th at 283). This duty of loyalty continues after the client has discharged the lawyer, and the action injurious or adverse to the former client does not need to involve the use or disclosure of confidential information. *In re McIntosh*, 2015 WL 241130 at *5 (citing *Oasis*, 51 Cal. 4th at 821 and *People ex rel. Deukmejian v. Brown*, 29 Cal. 3d 150, 156 (Cal. 1981)). A distinct and separate breach of ethical duty arises when the attorney discloses the former client's confidential information adversely to the former client. *Oasis*, 51 Cal. 4th at 823 ("the rule appropriately bars the attorney from *both* disclosing *or* using the former client's confidential information") (emphasis in original).

### B. The Bankruptcy Court's Findings

None of McGrane's and MLLP's arguments come anywhere close to disturbing the bankruptcy court's conduct determinations. Appellants fire a blunderbuss of criticisms but fail to

1  meaningfully address, let alone somehow justify or excuse, the acts of disloyalty catalogued by the
2  bankruptcy court and the finding that they "espouse[d] a position that jeopardize[d] the interests of
3  the Committee for the benefit of another client" in the Howrey matter.  *See* Fee Order at 20; *see*
4  *also Oasis*, 51 Cal. 4th at 821.  They also do not seriously dispute that McGrane "could (and did)
5  use information obtained as counsel to the Committee to fight a significant settlement" reached by
6  the Committee, "impairing the ability" of the Committee to pursue consensual resolution of the
7  matters, Fee Order at 17, or acted adversely to the Committee in violating the automatic stay.  *Id*.
8  at 18.  They do not deny that McGrane "filed an opposition to the motion to seal and a supporting
9  declaration in which he publicly disclosed confidential information concerning the Committee's
10 deliberations and strategy, including an internal memorandum and a term sheet regarding a
11 proposed chapter 11 plan."  *Id*. at 9; *see also id*. at 17 n.9.  And they do not dispute appellees'
12 charge that confidential Committee materials still remained available to the public on their
13 website.  Dkt. No. 16-3 at 15 n.7.  While McGrane says he did not violate a privilege in disclosing
14 confidential Committee information, that is far from the point.  He effectively concedes making a
15 former client's confidential information public, and in the context of acting adversely to it.  *See,*
16 *e.g.*, Dkt. No. 12-3 at 4-5 n.2; Dkt. No. 12-6 at AA276-AA305.

17 Instead of meaningfully challenging these troubling facts, appellants assert that bankruptcy
18 law and rules bar a finding of misconduct under the California Rules of Professional Conduct.  *See*
19 Dkt. No. 12-3 at 13 (quoting *In re Song*, 2008 WL 6058782, at *11 ("State rules of professional
20 responsibility apply, as long as they do not conflict with the Bankruptcy Code and/or the
21 Bankruptcy Rules")).  Specifically, they lean heavily on 11 U.S.C. § 1103(b) as purported
22 validation of their conduct.  Dkt. No. 12-3 at 14-15.  Section 1103(b) states that an attorney
23 employed to represent a committee may not concurrently represent an entity with an adverse
24 interest in the case.  11 U.S.C. § 1103(b).  It also states that representation of "one or more
25 creditors of the same class as represented by the committee shall not per se constitute the
26 representation of an adverse interest."  *Id*.

27 Nothing in the plain words of the section applies to the facts in this appeal or provides any
28 warrant for appellants' ethical breaches.  As an initial matter, Section 1103(b) addresses

7

concurrent client engagements. That topic has no application here because McGrane and his firm did not represent the creditor clients concurrently. Their problematic conduct occurred in the course of successive client engagements. In addition, Section 1103(b) is not a blanket exemption from the rules of professional conduct, as appellants suggest. It has been applied with the California Rules of Professional Conduct to affirm an attorney's disqualification. *In re 3DFX Interactive, Inc.*, No. BAP NC-07-1240-KJuMK, 2008 WL 8448326, at *5-7 (B.A.P. 9th Cir. Feb. 6, 2008). And the section's limited statement against a "per se" presumption of adverse interest is neither implicated by the conduct at issue here nor is it, in any way, a categorical imperative deeming all concurrent creditor representations to be automatically acceptable. *See id*. at *5 (Section 1103(b) requires fact-specific inquiry "on a case-by-case basis").

Consequently, nothing in Section 1103(b) bars the bankruptcy court from evaluating McGrane's conduct under the California Rules of Professional Conduct. Appellants' reliance on *In re Whitman*, 101 B.R. 37, 38 (Bankr. N.D. Ind. 1989), does not compel a different conclusion. This out-of-circuit case did not apply California law and addressed a concurrent representation issue solely under Section 1103(b). That alone vitiates much of its relevance here. To the extent the case stands, as McGrane urges, for the proposition that a lawyer may withdraw as committee counsel and subsequently represent an adverse creditor in the same matter, the Court declines to follow it. *In re Whitman* does not explain how an attorney with such conflicting representations would not endanger the interests of either client. It does not state whether the attorney had done significant work on behalf of the committee, whether the parties had expressed willingness to consent to or waive the conflicts, or whether any other particular factual circumstances reassured the court on the conflict risks. *In re Whitman* is far too weak a platform on which to question the Fee Order.

Appellants also overreach to claim that the Committee provided written consent to McGrane's subsequent client engagements or otherwise generally waived its right to consent. Dkt. No. 12-3 at 9-11. Appellants mischaracterize the January 18, 2013 Order withdrawing the first disqualification motion as a written consent. *See id*.; *see* Dkt. No. 12-7 at AA314-AA317. But the order indicates that the Committee, at most, agreed not to attempt to disqualify McGrane

8

1    for his work only on two specific appeals before another court. Dkt. No. 12-7 at AA316. The
2    bankruptcy court found that the limited work McGrane intended to do on the two appeals focused
3    on legal issues, not facts, and determined that confidential information of the Committee would
4    not be at risk. *See, e.g.*, *id*. at AA418, AA420. The order also recognized that the Committee
5    "reserve[d its] rights with respect to disqualification issues," and indicated that "Howrey Claims
6    and its counsel will be held in contempt of court should they further pursue" their claims in any
7    other manner. *Id*. at AA316. These facts do not amount to a "written consent" to any acts
8    undertaken by McGrane or MLLP before the bankruptcy court, before or after this time.

   Appellants' argument that waiver occurred when the Committee purportedly acquiesced to McGrane's engagement on "two *additional* adverse representations" is equally ill-taken. *See* Dkt. No. 12-3 at 11 (emphasis in original). The first additional "adverse representation[]" involves an appeal to the District Court of an automatic stay issue, which was ultimately consolidated with two prior appeals. *Id*. (citing Dkt. 12-7 at AA426-AA435). The Committee may not have challenged this representation because it related to work on an appeal that the Committee had agreed to tolerate in the January 18, 2013 Order. *See* Fee Order at 10-11*; see* Dkt. No. 12-7 at AA314-AA316. But even if the Committee had acquiesced to appellants' participation in one limited appeal, it did not waive the right to object to directly adverse acts by appellants in the bankruptcy court. When appellants took on the second additional "adverse representation[]" and reappeared in the bankruptcy court, objecting to the settlement in May 2014, the Committee promptly renewed its motion to disqualify. *See* Dkt. 12-3 at 11 (citing Dkt. No. 12-7 at AA545-AA546 (May 10, 2014 Advanced Creditors objections), AA548-AA561 (May 28, 2014 Advanced Creditors' Further Objections to Settlement)); *see also* Dkt. No. 12-7 at AA629-AA630 (June 27, 2014 Notice of Hearing on Renewed Motion to Disqualify); Dkt. No. 16-3 at Exh. A (May 20-21, 2014 emails re renewed motion to disqualify). Appellants have not established waiver.

   Appellants' suggestion that a conflict should not have been found because their work for the Committee and later clients was not "substantially related" is also unavailing. It is hard to fathom how McGrane can believe that his work "investigat[ing] potential claims against the former partners of Howrey" for the Committee and his work investigating, prosecuting, and trying

1    to preserve competing claims against the same partners on behalf of different sets of creditor

2    clients are not "substantially related." *See* Fee Order at 17.  The bankruptcy court found the work

3    "substantially related" precisely because "'the factual contexts of the two representations are

4    similar or related.'" *Id.* (quoting *Employers Ins. of Wausau v. Albert D. Seeno Const. Co.*, 692 F.

5    Supp. 1150, 1162 (N.D. Cal. 1988)).

6          Appellants do not challenge this legal standard or identify any incorrect statement of facts

7    by the bankruptcy court.  Rather, they argue the "bankruptcy court misread the evidence it cited in

8    support" of its conclusions.  *See* Dkt. No. 12-3 at 11-13; Dkt. No. 20-3 at 8-9.  That is incorrect.

9    The bankruptcy court made specific and well-supported findings that the claims pursued by

10   McGrane and MLLP's later clients arose from the "same nucleus of facts" at the heart of their

11   work for the Committee, and that "specific factual details and legal theories" learned in the prior

12   representation could be used in prosecuting the new claims.  Fee Order at 17-18.  The bankruptcy

13   court also credited Committee observations that the "'new' alter ego claims [of appellants' latter

14   clients] were similar to Mr. McGrane's admitted 'ill-conceived' theories that he researched and

15   advocated while acting as Committee counsel," and found substantial similarity between these

16   matters and the substance of the settlement that appellants opposed on behalf of their new clients.

17   *Id*. at 12; *see also id*. at 11.  The Court reached the same conclusion on the similarity of the

18   representations when it held that the claims being pursued in the main Howrey LLP bankruptcy

19   case "substantially overlap with appellants' alter ego claims" sponsored by McGrane and his

20   clients.  *See In re Howrey LLP*, No. 14-CV-03062-JD, 2014 WL 3427304, at *3 (N.D. Cal. July

21   14, 2014).  Appellants have made no showing of a misreading or misunderstanding of these facts.

22         These considerations dispatch appellants' main contentions on the conduct findings.

23   Appellants try to smuggle in new arguments in their reply papers, but "[r]aising new arguments in

24   a reply brief is classic sandbagging, and the Court will not tolerate it." *Cal. Sportfishing Prot.*

25   *Alliance v. Pac. States Indus., Inc.*, No. 15-CV-01482-JD, 2015 WL 5569073, at *2 (N.D. Cal.

26   Sept. 22, 2015).  The new arguments in the reply will not be considered on appeal.  The Court also

27   denies appellants' request that it take judicial notice of documents submitted with their reply,

28   including (1) transcripts from the *In re Heller Ehrman LLP* case and (2)(A)-(B) appellants'

correspondence with the California state bar.  That these documents exist is of little persuasive value on the issues of this appeal, and the Court will not consider any legal or factual arguments presented to the Court through those papers for the first time.  *See Bichindaritz v. Univ. of Wash.*, 550 F. App'x 412, 413 (9th Cir. 2013) ("We deny both motions for judicial notice because the material that is the subject of each notice is unnecessary to the resolution of the issues presented on appeal.")

## II.    THE FEE DETERMINATION

After finding that McGrane and MLLP breached their ethical obligations, the bankruptcy court had ample discretion to cut their fees.  Appellants cannot seriously dispute that the bankruptcy court may reduce or deny attorney fees for professional conduct violations.  The bankruptcy courts of this circuit have long recognized full discretion to reduce, deny, or require forfeiture of fees based on attorney violations of professional ethics or breaches of fiduciary duties.  *See, e.g, In re McIntosh*, 2015 WL 241130 at *6 (and cases cited therein); *In re Wilde Horse Enters.*, 136 B.R. 830, 844 (Bankr. C.D. Cal. 1991) (citing, *inter alia*, *Matter of Ranchero Motor Inn, Inc.*, 527 F.2d 1044 (9th Cir. 1975)); *In re Song*, 2008 WL 6058782, at *11-*12; *In re Meruelo Maddux Props., Inc.*, Nos. CC–12–1304–TaMoMk, 09–13356–VK, 2013 WL 1890634, at *9 (B.A.P. 9th Cir. 2013).  And under equitable principles, a federal court "has broad discretion to deny fees to an attorney who commits an ethical violation." *Rodriguez*, 688 F.3d at 655.  The court "may consider the extent of the misconduct, including its gravity, timing, willfulness, and effect on the various services performed by the lawyer, and other threatened or actual harm to the client." *Id*.

In addition to this inherent authority, the bankruptcy court has broad statutory power over fee awards.  Under 11 U.S.C. § 330, the bankruptcy court "may award" certain professionals "reasonable compensation for actual, necessary services" and "reimbursement for actual, necessary expenses." *See* 11 U.S.C. § 330(a) (listing fee consideration factors).  The bankruptcy court "has *sua sponte* authority to 'award compensation that is less than the amount of compensation that is requested.'" *In re Eliapo*, 468 F.3d 592, 597 (9th Cir. 2006) (quoting 11 U.S.C. § 330(a)(2)).  And the bankruptcy court "shall not" compensate services that were

11

unnecessarily duplicative, not reasonably likely to benefit the estate, or unnecessary to the administration of the case.  11 U.S.C. § 330(a)(4).

Despite the wide discretion vested in the bankruptcy court over fee determinations, appellants invite the Court to restrict its ability to consider post-withdrawal misconduct in determining the overall fee award for services to the Committee.  The Court declines.

As an initial matter, the fact that the fee award here modified prior interim awards is of no moment.  Interim awards are "'*always* subject to the court's reexamination and adjustment during the course of the case.'"  *In re Strand*, 375 F.3d at 858 (quoting *In re Evangeline Ref. Co.*, 890 F.2d 1312, 1321 (5th Cir. 1989)) (emphasis in original).  The fees of counsel acting unethically may be reduced because "'payment is not due for services not properly performed'" and it "'compounds injustice' to allow the attorney to recover fees from the very party injured by the ethical violation."  *Rodriguez*, 688 F.3d at 654 (quoting *Image Technical Serv., Inc. v. Eastman Kodak Co.*, 136 F.3d 1354, 1358-59 (9th Cir. 1998) and *Cal Pak Delivery, Inc. v. United Parcel Serv.*, 52 Cal. App. 4th 1 (1997)).  The Ninth Circuit has clearly indicated that pre-breach fees may be forfeited in appropriate circumstances.  *Id*. ("upholding the disgorgement of attorneys' fees" when "'the need for attorney discipline and deterrence of future improprieties of that type outweighs' the concerns of providing 'the client with a windfall' and depriving the 'attorney of fees earned while acting ethically'").

When attorneys have violated California Rules of Professional Conduct, bankruptcy and other federal courts may look to California case law for its persuasive value in determining the attorney's entitlement to fees.  *See Rodriguez*, 688 F.3d at 653 n.6, 654-55; *Meruelo*, 2013 WL 1890634, at *9.  California courts have affirmed the denial of some or all fees to attorneys who commit ethical violations, including situations involving potential or actual conflicts of interest.  *See Rodriguez*, 688 F.3d at 654 (surveying California cases).  "The egregiousness of the violation is often the critical factor."  *Id*. at 655.  The guiding principle considers the actual value of the attorney's services to the client and whether the client would be unjustly enriched.  *See, e.g., In re Song*, 2008 WL 6058782, at *11-*12; *Cal Pak*, 52 Cal. App. 4th at 16 ("appellate courts … allowed partial fee recovery or acknowledged that *some* fees could be recovered by the attorney:

12

(1) where there was no objection by the client; (2) for services rendered before the ethical breach; or (3) on an unjust enrichment theory where the client's recovery was a direct result of the attorney's services") (citations removed, emphasis in original). Post-breach information has been used to assess the actual value of the attorney's pre-breach services. *See Cal Pak*, 52 Cal. App. 4th at 16 (holding that the value of pre-breach fees could not be decided until the case's conclusion, because only then would it be clear whether attorney's services proved of value to his former clients' recovery, and whether any recovery for services was appropriate).

Applying these principles, bankruptcy courts have reduced or entirely denied fees when attorney misconduct warranted discipline and deterrence. *See, e.g., In re Wilde Horse*, 136 B.R. at 847 (finding the denial of all fees proper where the acts of mismanagement "were wrongful, wilfully incompetent, or grossly negligent"); *In re McIntosh*, 2015 WL 241130, at *6 (requiring disgorgement of all fees paid to attorney who breached duty of loyalty to former client).

Through the lens of this case law, the bankruptcy court's fee decision was well within its discretion. The bankruptcy court determined that appellants' violations of the California Rules of Professional Conduct were substantial enough to warrant disgorgement of a portion of their pre-breach fees and that disgorgement would serve an important purpose in disciplining and deterring future misconduct. *See* Fee Order at 2-3, 20-21. The bankruptcy court also had discretion to revisit the interim fee awards to reduce compensation, gauge the value of the services, and ensure that the fee award did not compensate services that were not "necessary to the administration of the case." *See In re Strand*, 375 F.3d at 858; 11 U.S.C. § 330. Based on the bankruptcy court record and findings, it cannot be seriously disputed that McGrane and MLLP had destroyed much of the value of their services to the Committee by performing "substantially related" work for an adverse party, publicly disclosing confidential client materials acquired during those services, and opposing the Committee's resolution of claims -- the ostensible goal of the "litigation" services performed by McGrane and MLLP for the Committee in the first place. *See* Fee order at 20-21, 17 n.9.

Significantly, the bankruptcy court did not eliminate all fees to appellants. It approved $32,355 in fees as its best estimate of the value of the work performed by appellants untainted by

13

misconduct.  *See* Fee Order at 21, 17 n.9; *see also In re Strand*, 375 F.3d at 861 (affirming bankruptcy court's decision to cut attorney litigation fees by half, because "although the litigation may have had some merit, the degree to which it was pursued was unnecessary.")

Notwithstanding appellants' claim, 11 U.S.C. §§ 328(c) or 330 do not drive a different result.  These sections have nothing to say on the issue of adjusting fees to address professional conduct issues.  And while they list factors the bankruptcy court may use to determine compensation, neither section explicitly limits what other factors may be considered.  Neither section circumscribes the facts a bankruptcy court may consider in determining the actual value of an attorney's services.  *See* 11 U.S.C. § 330(a)(3) ("the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors…").  *Market Center East Retail Prop. v. Lurie*, 730 F.3d 1239, 1250 (10th Cir. 2013) does not help appellants.  Appellants have not shown that the Ninth Circuit has endorsed that decision's restrictive view of the 11 U.S.C. § 330 factors analysis.  To the contrary, in this circuit the bankruptcy court's broad discretion extends to evaluating the nature, extent, and value of services flexibly, taking into account what factors the court deems relevant, even under Section 330 review.  *See In re BCE W., L.P.*, 121 F. App'x 779 (9th Cir. 2005) (Mem.).

As a final point, appellants' professed concern that this case will lead to rampant disgorgement orders in other matters is misplaced.  The Court considers it quite unlikely that affirming the Fee Order under the unusual and egregious facts of this case will lead to a wave of disgorgement orders in less serious circumstances.

**CONCLUSION**

The decision of the bankruptcy court is **AFFIRMED**.

Dated: October 19, 2015

_____
JAMES DONATO
United States District Judge